maintained. It is to be observed that the request which was made limited the advice of counsel to a statement of defendant's case, instead of referring to all the facts and circumstances, knowledge and information, possessed by the defendant. We think the exception was unavailing. In *Hall* v. *Suydam*, 6 Barb. 84, it was said, in regard to this question, that "it is properly a question for the jury whether such party acted *bona fide* on the opinion given him by his professional adviser, believing that the plaintiff was guilty of the crime of which he was accused, or that he had a good cause of action against the plaintiff;" and it was also further said: "Good faith, merely, [in making a criminal charge against another,] is not sufficient to protect the defendant from liability. There must be a reasonable ground of suspicion, supported by circumstances sufficiently strong, in themselves, to warrant a cautious man in the belief that the plaintiff was guilty of the crime with which he was charged, to make out such a probable cause as will be a defense [to an action for a malicious prosecution.]" In *Shafer* v. *Loucks*, 58 Barb. 426, it was said: "Belief, and reasonable grounds for belief, are, undoubtedly, both essential elements in the justification of probable cause. * * * A man must act fairly, prudently, cautiously, and reasonably, as well as in good faith. This, I think, is sound law. That is, he must not act upon mere conjectures, or impulse, or passion." We think the case from which we have made the quotation was followed by the trial judge in presenting this case to the jury.

The counsel for the defendant asked the court to charge the jury that the defendant "had the right, in making up his mind whether the plaintiff was acting in good faith in making a claim in regard to these premises, and in cutting this timber, to take into consideration the fact that he had been convicted of burglary and larceny." In response to that request the court observed: "I will say to the jury that they may take into consideration all the proof that has been given that may properly bear upon the conduct of the man. I don't like to single out a thing of that sort, and say that they shall take it into consideration. I will leave it for them to do as they choose about it." Thereupon the defendant's counsel inquired, viz.: "Is our request declined?" The court replied: "Yes, in your express words, I decline." Thereupon an exception was taken. We think the trial judge sufficiently left the fact involved in the request to the jury, for their consideration, and he committed no error in declining to yield to the precise language of the request. We have looked at the other exceptions found in the appeal book, and are of the opinion that none of them present a ground upon which a reversal should be had. Judgment and order affirmed, with costs. All concur.

---

### BARTHOLOMEW *v.* ADAMS *et al.*

(*Supreme Court, General Term, Third Department.* December 28, 1889.)

WILLS—CONSTRUCTION—VESTED LEGACY.

By the terms of his will, testator devised all his real and personal property to his wife, with the provision that she pay to his niece $1,000 "at any time when my said wife chooses to pay the same; but, in case of the death of my said wife before the payment thereof, then and in that case the same is to be paid out of the personal property, if there shall be sufficient for that purpose, and, if not sufficient personal property, then the sum remaining unpaid thereof is to be paid out of the real estate. * * * It is my intention to give the whole of said property to my said wife, with power to control, sell, and convey, trade or transfer, said property wholly as she chooses, with the provision as to the said one thousand dollars." *Held*, that the legacy vested upon the death of the testator, and was then a charge on the realty, payable on the death of the widow.

Appeal from special term, Washington county.

Action by Levi Bartholomew, as administrator of Sarah A. Bartholomew, deceased, against Robert J. Adams and others. The opinion at special term was as follows:

"TAPPAN, J. Plaintiff seeks to recover a legacy to Sarah A. Bartholomew under the will of James H. Martin. The will was executed February 11, 1865. The testator died in March, 1868, and his will was probated, and the executrix qualified, on the 1st day of June, 1868. After providing for the payment of the testator's debts, the will read as follows: 'I give and bequeath to my dear wife, Docia Ann Martin, all my real and personal property, of every name and nature whatsoever; with this provision, however: My said wife is to pay to my niece, Sarah A. Bartholomew, the sum of one thousand dollars (without interest) at any time when my said wife chooses so to pay the same; but, in case of the death of my said wife before the payment thereof, then and in that case the same is to be paid out of the personal property, if there shall be sufficient for that purpose, and, if not sufficient personal property, then the sum remaining unpaid thereof is to be paid out of the real estate. My said wife is to have the power to will, sell, and convey the property of which she will become seised by this will, said one thousand dollars to be paid as above provided, however; and the avails thereof, in case of sale, is to be used or disposed of as my said wife may choose. It is my intention to give the whole of said property to my said wife, with power to control, sell, and convey, trade or transfer, said property wholly as she chooses, with the provision as to the said one thousand dollars.' When such will was made, testator was very sick, and did not expect to survive but a few hours. He left no children. His family then consisted of his said wife and the said Sarah A. Bartholomew, who was then between 16 and 17 years old, who had resided with him since she was 7 years of age. He then owed debts exceeding the amount of his personal property. He was seised of the land described in the complaint,—about 19 acres in the town of Whitehall,—and owned no other real estate. Said Sarah A. Bartholomew continued to reside in the family of the testator until he died, and afterwards with the said Docia Ann Martin, as a member of her family, until the time of the death of the said Sarah A., September 15, 1872. During her whole life she was of feeble intellect, not qualified to do business, or to have the control or management of property, independent of others; but she was of robust health, knew how to do the work required to be done in a house, and about a barn and farm, and was kind and obedient.

"Said Docia Ann used and occupied the said property devised and bequeathed to her by said will until her death, August 15, 1888. After the death of said Sarah A., and on the 25th of March, 1873, she conveyed said premises by warranty deed to the defendants Asbury Merriam, William J. Wood, and Bishop Merriam, which deed recited a consideration of $2,500, and contained a reservation of the possession of said property during her life to the said Docia Ann, and provided that, at her decease, the said parties were to have full possession. At the time this deed was executed, said parties executed to her a life-lease of said premises, which contained a covenant by the lessors that in case the said Docia Ann should need, for her use, support, and comfort, more than the annual rents and profits of said property, then said lessors, on request, would pay to her such sum or sums, and at such time and times, as she should require and request, for her comfort, use, and support. No consideration in money or property was paid upon the making of said deed or said lease. Said Docia Ann was in possession of said property under said will at the time the said deed and lease were made, and so continued up to the time of her death, August 15, 1888. The object of said deed and said lease was to perfect the title of said premises in said grantees and lessors upon the decease of the said Docia Ann, and the only actual consideration therefor was the said covenant in said lease. Said Docia Ann left a will, whereby she devised and bequeathed all the remainder of her real and personal property, after payment of her debts and liabilities, to the defendants Robert J. Adams, Betsey Ann Reed, and Rachel A. Weaver; and the defendant Asbury Merriam is named in said will as sole executor thereof. Under the will and said deed, defendants claim in-

terest adverse to the plaintiff. It is contended by the defendants that the legacy was paid by board, care, and clothing furnished to said Sarah A. from the time of the death of the testator, in March, 1868, to the time of her death, September 15, 1872. During that time she resided with said Docia A., as a member of her family. It was not claimed that any agreement was made by said Sarah, or any one having authority in her behalf, to pay for board, lodging, or clothing. She had money from her father's estate that was sufficient to pay for her clothing, that was probably used for that purpose. She performed work about the house, which was of some value.

"Under the circumstances, the law does not imply an agreement to pay, because it is not presumed that one party expected to charge, or the other to pay, for what was furnished. The defendants have the burden of showing payment, and have failed to show that what Sarah A. received was of more value than her labor and services rendered for, and while she was a member of the family of, said Docia Ann. No claim was made by the defendants that payment of the legacy had been made in any other way. It is contended by defendants, however, that the legacy was only to be paid to Sarah A., either during the life of Docia A. Martin, in case the latter should choose to pay, or, in case said Sarah A. survived her, then it was to be paid out of the personal property of testator, and, in case of deficiency, then out of the real estate; that Sarah A. having died before said Docia A., before the legacy was paid, and before it was due, it was merged, and did not pass to the plaintiff as administrator. It is argued that it is to be fairly inferred from the mental condition, age, and relationship of said Sarah A. to the testator and his wife that the legacy was intended for her personal use and protection only, and the postponement of its payment was in her interest, for her benefit, and not for the benefit of testator's wife, or of the estate given to her. The wife is given property, with the provision and condition attached that she is to pay this sum of $1,000 to Sarah A. Having received the property, she became liable to fulfill the condition attached to its devise to her. *Brown* v. *Knapp*, 79 N. Y. 136; *Fowler* v. *Insurance Co.*, 28 Hun, 195; *Harris* v. *Fly*, 7 Paige, 421. Postponement of payment operated to increase the amount which she would receive to an amount equal to the interest of $1,000, which would have belonged to Sarah A. had the legacy been payable immediately. There is no condition or provision as to how the legacy was to be used, as would have been the case if it had been intended for support and maintenance only. Neither is there any condition as to payment; no contingency which would excuse payment. Care seems to have been taken to preserve the lien upon the testator's property for the payment of the legacy, and allow Docia A., the widow, to dispose of the property in any manner, at any time, subject to such lien. For these reasons I think the legacy vested upon the death of the testator, and was then a charge upon the real estate, payable upon the death of the widow; that the deed and lease do not in any manner affect such lien. *Patterson* v. *Ellis*, 11 Wend. 259; *Marsh* v. *Wheeler*, 2 Edw. Ch. 156; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Loder* v. *Hatfield*, 71 N. Y. 93; *Bushnell* v. *Carpenter*, 92 N. Y. 270. The defendants' title is referred to the will, and is subject to its provisions. *Harris* v. *Fly*, 7 Paige, 421. A decree should be entered that plaintiff is entitled to receive said legacy, and that the same is a lien upon said premises; that the same be sold, and the proceeds be applied to pay plaintiff's costs and the expenses of sale, and the said sum of $1,000, and interest from August 15, 1888, and directing the surplus, if any, to be paid to the defendants, the grantees in said deed. Judgment is ordered accordingly."

Defendants appeal.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*A. D. Wait*, for appellants. *J. Sanford Potter*, for respondent.

No opinion. Judgment affirmed on opinion of court below.